**Electronically Filed
Intermediate Court of Appeals
29315
09-MAR-2011
09:42 AM**

NOS. 29314 and 29315

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
JAMES WAYNE SHAMBLIN, aka STEVEN J. SOPER, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NOS. 06-1-0507 and 07-1-0161)

MEMORANDUM OPINION
(By: Nakamura, C.J., Leonard and Ginoza, JJ.)

This appeal arises from two cases in the Circuit Court
of the Second Circuit (circuit court),[1] Criminal No. 06-1-0507
and Criminal No. 07-1-0161, that were consolidated below for
trial but for which separate judgments were issued. Each case
involved a number of charged offenses against Defendant-Appellant
James Wayne Shamblin (Shamblin). Shamblin appealed in each case
and the appeals were subsequently consolidated by order of this
court.

In Criminal No. 06-1-0507, Shamblin was charged with
five counts of burglary in the first degree in violation of
Hawaii Revised Statutes (HRS) § 708-810(1)(c) (1993); one count
of unauthorized control of a propelled vehicle in violation of
HRS § 708-836 (Supp. 2010); one count of fraudulent use of

---

[1] The Honorable Richard T. Bissen, Jr. presided.

plates, tags or emblems in violation of HRS § 249-11 (Supp. 2010); one count of theft in the first degree in violation of HRS § 708-830.5(1)(a) (1993 & Supp. 2010); two counts of theft of a credit card in violation of HRS § 708-8102(1) (1993); two counts of theft in the second degree in violation of HRS § 708-831(1)(b) (Supp. 2010); and one count of theft in the fourth degree in violation of HRS § 708-833(1) (1993).

In Criminal No. 07-1-0161, Shamblin was charged with nine counts of burglary in the first degree; ten counts of theft in the second degree; four counts of theft of a credit card; and three counts of fraudulent use of a credit card in violation of HRS § 708-8100(1)(a) (1993 & Supp. 2010).

Shamblin appeals from the judgments, both entered on July 22, 2008 by the circuit court, in Criminal No. 06-1-0507 and Criminal No. 07-1-0161, convicting him of all counts charged respectively in each case. Pursuant to a plea agreement with the State of Hawai'i (State), Shamblin pled no contest to all counts charged in both cases. Prior to sentencing, he filed motions in each case to withdraw his no contest pleas. After briefing and a hearing, the circuit court denied Shamblin's motions to withdraw his no contest pleas and proceeded to sentencing.

For each separate case, the sentences for the multiple counts therein were ordered to run concurrently with each other, with mandatory minimum terms imposed of six years and eight months for all class B felonies and three years and four months for all class C felonies. The circuit court further ordered, as part of the judgment in Criminal No. 07-1-0161, that "all terms of incarceration shall run concurrently with each other in this case, and shall run CONSECUTIVELY to the term of imprisonment ordered in CR. N. 06-1-0507(4)."

On appeal, Shamblin raises three points of error: (1) the circuit court abused its discretion in denying his pre-

sentence motions to withdraw the no contest pleas; (2) the circuit court should have permitted him to withdraw his no contest pleas due to ineffective assistance of trial counsel; and (3) the circuit court erred in ordering that the mandatory minimum terms run consecutively for Criminal No. 06-1-0507 and Criminal No. 07-1-0161.

Based upon our careful review of the records in both Criminal No. 06-1-0507 and Criminal No. 07-1-0161, our review of the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we vacate that part of the judgment in Criminal No. 07-1-0161 that requires the mandatory minimum terms in that case to run consecutively with the mandatory minimum terms in Criminal No. 06-1-0507. In all other respects, we affirm the judgments in both cases.

I. Motions to Withdraw No Contest Pleas

A defendant does not have an absolute right to withdraw a plea, but in cases where a motion to withdraw a plea has been filed prior to sentencing, "the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice." State v. Jim, 58 Haw. 574, 576, 574 P.2d 521, 523 (1978). "[T]he defendant has the burden of establishing plausible and legitimate grounds for withdrawal." State v. Merino, 81 Hawai'i 198, 223, 915 P.2d 672, 697 (1996) (quoting State v. Costa, 64 Haw. 564, 565, 644 P.2d 1329, 1331 (1982)).

The Hawai'i Supreme Court has recognized "two fundamental bases of demonstrating 'fair and just reasons' for granting withdrawal of a plea: (1) the defendant did not knowingly, intelligently or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea." State v. Gomes, 79 Hawai'i 32, 37, 897

3

P.2d 959, 964 (1995). On appeal, the trial court's ruling is reviewed for abuse of discretion. Id. at 36, 897 P.2d at 963.

A. Knowing, Intelligent, Voluntary Waiver of Rights

Shamblin fails to establish that his pleas were not entered knowingly, voluntarily and intelligently. At the change of plea hearing, the circuit court engaged in an appropriate colloquy with Shamblin to ensure that he was knowingly, intelligently, and voluntarily waiving his rights. Although Shamblin takes issue with the circuit court's reference to probation as a sentencing option if Shamblin changed his plea, the circuit court was not bound by the plea agreement and properly recited all possible sentencing options upon a change of plea. That is, the circuit court's references to probation were made in the context of explaining the full range of penalties associated with the many counts charged in Shamblin's cases.

Shamblin also asserts, for the first time on appeal, that his plea in Criminal No. 06-1-0507 was "defective because two charges [counts 4 and 13] were omitted and then added back in, after the plea was given and accepted." Shamblin further argues that: "[b]ecause the Record does not clarify that [he] understood the effect of this additional felony charge [i.e., count 4, burglary in the first degree], he should have been permitted to withdraw his plea." Shamblin did not object to the circuit court adding counts 4 and 13 to the plea form after initially finding that Shamblin's pleas were knowingly, intelligently, and voluntarily entered. When the circuit court discovered the error in the plea form, the court asked if either party wanted the court to go through the form again and Shamblin's defense counsel replied "No, your Honor." Nor did Shamblin raise the circuit court's addition of the two omitted counts in Criminal No. 06-1-0507 as a basis for withdrawing his no contest plea in his motion to withdraw the plea or during the

4

hearings on the motion. Accordingly, we review Shamblin's claim for plain error. See Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b); State v. Nguyen, 81 Hawai'i 279, 292, 916 P.2d 689, 702 (1996). An appellate court's "power to deal with plain error is a power to be exercised sparingly and with caution." Id. at 293, 916 P.2d at 703 (citation omitted).

The record reveals that the circuit court did engage in a colloquy with Shamblin regarding counts 4 and 13:

> [Court]     Q. Let me just in particular Mr. Shamblin, in 06-1-0507, in addition to counts 1, 7, 10 and 12, there's also count 4, a burglary in the first degree. Do you understand that also carries a maximum term of ten years imprisonment and a $25,000 fine?
>
> [Shamblin]  A. Yes, sir.
>
>           Q. This is, I guess, some kind of typographical oversight. Counts [sic] 13 is a theft in the fourth degree, a petty misdemeanor. That carries the maximum penalty of 30 days in jail and I [sic] $1,000 fine. Do you understand that, sir?
>
>           A. Yes, sir.
>
>           Q. And again with respect to those counts, they continue to come with the agreement that the State will recommend ten years imprisonment for all class B felonies, five years on all Class C felonies with a six year, eight month on Class Bs and three year four month on the Class Cs. Do you understand that, sir?
>
>           A. Yes, sir.
>
>           Q. And then they are agreeing all of these terms including the two terms we just discussed, counts 4 and 13, could run concurrently with the criminal number 07-1-0161. And again the State would not request consecutive or extended sentencing. You'll agree to full restitution, joint and several with Breeze Chrisler. And you'll agree to pay $1,976 seized towards restitution. Is that all understood.
>
>           A. Yes, sir.
>
>           * * * *

The circuit court thus questioned Shamblin in open court about counts 4 and 13, and also advised him of the maximum penalties of each. The circuit court also had Shamblin write his initials by these counts after they were added to the plea form and before ultimately accepting his pleas and finding him guilty

of all counts.  We conclude that the circuit court sufficiently met the requirements of HRPP Rule 11.

Additionally, Shamblin's substantial rights were not prejudiced by the circuit court's addition of counts 4 and 13 to the plea form.  At the time of the change of plea hearing, Shamblin was aware that the State's Information and Complaint against him included these counts and that he was required to plead no contest to all counts in order to take advantage of the State's plea offer.  Moreover, both counts were part of Criminal No. 06-1-0507 and at sentencing the circuit court ordered all counts in Criminal No. 06-1-0507 to run concurrently. Accordingly, inclusion of counts 4 and 13 did not affect sentencing.  As Shamblin has failed to demonstrate that his substantial rights were prejudiced, we decline to invoke the plain error rule with regard to counts 4 and 13.

We also disagree with Shamblin's contention that he should have been allowed to withdraw his no contest pleas because they were made under duress; that is, after he was put in the position of agreeing to the State's plea offer or going to trial with an attorney, Cary Virtue (Virtue), whom Shamblin alleges was not prepared.  Shamblin points to a hearing the day before he changed his plea wherein he indicated dissatisfaction with his defense counsel and the possibility of a continuance was discussed.  The circuit court, noting that Shamblin had already had multiple defense counsel, stated it would not entertain a motion to continue trial, that trial would go forward as scheduled, and that Shamblin was either going to represent himself or have his defense counsel, Virtue, represent him. Shamblin's defense counsel confirmed to the circuit court that he was prepared to proceed with trial.  Under these circumstances, the circuit court correctly relied on State v. Topasna, 94 Hawaiʻi 444, 16 P.3d 849 (App. 2000) in noting that "a voluntary

choice between two extremely unpalatable alternatives, that is, whether to plead guilty or go to trial and face a possibly higher sentence, is still voluntary."

Shamblin also apparently argues that he did not make his pleas knowingly, intelligently, and voluntarily because Virtue did not file pretrial motions that Shamblin had requested be filed and had not located witnesses.  We disagree.  The record establishes that Shamblin was fully aware, at the time he made his pleas of no contest, that the pretrial motions had not been filed and that the witnesses had not been found.  Moreover, other than the testimony of Breeze Chrisler (Chrisler), which we address *infra*, Shamblin presented no evidence in support of his motion to withdraw his pleas that witnesses had been located, even though the hearing on his motion to withdraw was held nine months after his pleas.  Shamblin's arguments thus present no plausible and legitimate grounds for withdrawal of his no contest pleas.

B.  Alleged New Information

Shamblin argues that additional evidence became available when his co-defendant Chrisler testified at the hearing on his motion to withdraw the pleas.  Shamblin asserts that Chrisler's testimony evidences that Shamblin may not have been involved in all of the charged burglaries, that Chrisler was responsible for the stolen credit cards and unauthorized charges, that Chrisler is the one who drove the van at the time it was stolen, and that other people used the van to "smoke ice" and commit burglaries.

First, as to the stolen credit cards and unauthorized charges, Chrisler's testimony at the hearing was not new information that would justify withdrawal of Shamblin's pleas. Instead, Chrisler made these same admissions in her statement to

police, and the record reflects that Shamblin was aware of her statement to police at the time he entered his no contest pleas.

Second, contrary to Shamblin's apparent assertion, Chrisler did not testify that she alone committed any of the *charged* burglaries. Although she testified generally that she committed burglaries and "probably close to half of them were committed with [Shamblin]," she also testified that she was on a lot of drugs at the time and could not say which burglaries were the ones for which she was charged. She also testified she could not say who was with her for the burglaries with which she was charged and did not know if she committed any of the charged burglaries without Shamblin. Chrisler did, however, remember committing multiple burglaries with Shamblin at Kapalua Bay Villas and in Kihei.

Third, Shamblin points to Chrisler's testimony that she was the one who drove the stolen van after obtaining the keys in a burglary she committed with Shamblin. This seems of little consequence, as Shamblin was charged in the alternative as a principal or an accomplice. Moreover, Chrisler's testimony provides evidence that Shamblin also drove the van at times after it was stolen.

Finally, Shamblin relies on Chrisler's testimony that other people sometimes used the van to commit burglaries and smoke ice. Her testimony in this regard, however, provides no information as to what property in the van, if any, may have been from burglaries by unnamed others.

Overall, Chrisler's testimony further implicates Shamblin in a number of the crimes charged. Moreover, while Shamblin's actual guilt or innocence was not the issue in addressing the motion to withdraw his pleas, the circuit court properly considered whether the new information from Chrisler would exculpate Shamblin if believed by a reasonable juror.

Gomes, 79 Hawai'i at 37, 39, 897 P.2d at 964, 966. Ultimately, these considerations go to the question of whether Shamblin has established "plausible and legitimate grounds" for withdrawal of his pleas. Similar to the holding in Jim, the circuit court might have granted the motion to withdraw the plea but it did not and "we are not prepared to find that the denial constituted a clear abuse of the [circuit] court's discretion." 58 Haw. at 577, 574 P.2d at 523.

II.  Ineffective Assistance of Counsel Claim

On appeal, Shamblin also asserts an ineffective assistance of counsel claim, arguing that Virtue should have filed a motion to suppress, properly investigated potential defense witnesses, and informed Shamblin and the circuit court that on the eve of the change of plea hearing Shamblin's brother was purportedly in the process of hiring private counsel.

The Hawai'i Supreme Court has made it clear that "[i]n any claim of ineffective assistance of trial counsel, the burden is upon the defendant to demonstrate that, in light of all the circumstances, counsel's performance was not objectively reasonable." Briones v. State, 74 Haw. 442, 462, 848 P.2d 966, 976 (1993). Moreover, "matters presumably within the judgment of counsel, like trial strategy, will rarely be second-guessed by judicial hindsight." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247-48 (1998) (citations and internal quotation marks omitted) (emphasis in original).

"Ineffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." Richie, 88 Hawai'i at 39, 960 P.2d at 1247. (citation omitted). Shamblin did not provide affidavits or sworn statements detailing the substance of the allegedly exculpatory witnesses' testimony. He thus failed to establish his

ineffective assistance of counsel claim based on Virtue's alleged failure to investigate potential witnesses.

With regard to the motion to suppress, Virtue faced a situation where, if he filed any pre-trial motions, the State had made clear it would withdraw its plea offer, potentially subjecting Shamblin to extended and/or consecutive sentencing on the thirty-nine counts charged in the consolidated cases. Accordingly, Virtue had to weigh the merits of filing a suppression motion with the risk of losing the benefit of the State's plea offer. Based on Virtue's research that, under Hawai'i case law, a criminal defendant does not have an expectation of privacy in a vehicle that he does not own, Virtue made a tactical decision not to risk losing the benefit of the State's plea offer by filing a suppression motion that in his estimation was not likely to succeed. Virtue's decision not to file a motion to suppress was a strategic decision that should not be second-guessed on appeal.

Finally, Shamblin alleges that Virtue failed to inform him and the circuit court that Shamblin's brother was purportedly in the process of hiring private counsel on the eve of the change of plea hearing. Virtue's testimony contradicts this claim, indicating that Shamblin was informed. Moreover, this argument is far too speculative as to how this alleged omission by Virtue "resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Antone, 62 Haw. 346, 348-49, 615 P.2d 101, 104; see also Int'l Sav. and Loan Ass'n v. Carbonel, 93 Hawai'i 464, 473, 5 P.3d 454, 463 (App. 2000) ("An appellate court need not address matters as to which the appellant has failed to present a discernible argument."). Accordingly, this basis for Shamblin's ineffective assistance of counsel claim also fails.

III. Consecutive Mandatory Minimum Terms for Criminal No.
     06-1-0507 and Criminal No. 07-1-0161

      Shamblin argues that the circuit court erred in
ordering that the mandatory minimum terms in Criminal No.
06-1-0507 and Criminal No. 07-1-0161 run consecutively.  Shamblin
argues that such consecutive sentencing violates HRS § 706-
606.5(5) (1993 & Supp. 2010), the Repeat Offenders Statute.  In
this regard, we agree.

      The circuit court's sentence of Shamblin in each case
includes, *inter alia*, mandatory minimum terms of imprisonment of
six years, eight months on all class B felonies and three years,
four months on all class C felonies.  See HRS § 706-606.5(1)(b)
(Supp. 2010).  The sentences for convictions within each case
were ordered to run concurrently.  However, finding *inter alia*
that Shamblin had an extensive record and demonstrated no
intention to change his behavior or comply with treatment or
supervision, the circuit court further ordered in Criminal No.
07-1-0161 that all terms of incarceration in that case run
consecutively with the terms of imprisonment in Criminal No.
06-1-0507.  The sentencing hearing was held simultaneously on
July 18, 2008 for both cases.[2]

      Shamblin argues that the circuit court committed an
abuse of discretion in sentencing him to consecutive mandatory
minimum terms in the two cases because the cases were
consolidated and constituted "one" case for sentencing purposes.[3]
Shamblin further contends that, if they are considered separate
cases, neither would be a "prior conviction" under HRS § 706-

---

[2]  At the sentencing hearing, the circuit court specifically indicated
that "[t]he mandatory minimum terms will also run consecutive in each of the
-- one criminal number to the other."

[3]  Shamblin's challenge is limited to the consecutive sentencing for
the *mandatory minimum terms*.  No other part of the consecutive sentencing for
Criminal No. 06-1-0507 and Criminal No. 07-1-0161 is challenged on appeal.

606.5(5) such that a sentencing court could order consecutive sentencing of the mandatory minimum terms.

The State counters that "Shamblin's argument that the cases were consolidated and treated as the same case is incorrect. Separate records were maintained for each case. More importantly, Shamblin himself provided two separate change of plea forms . . . [and] filed two separate notices of appeal."

Given the express language of HRS § 706-606.5, we conclude that the circuit court could not impose a mandatory minimum term of imprisonment in Criminal No. 07-1-0161 to run consecutive to the mandatory minimum term imposed in Criminal No. 06-1-0507 under the circumstances of this case. HRS § 706-606.5(5) states in relevant part that "[t]he sentencing court may impose the above sentences consecutive to any sentence imposed on the defendant for a prior conviction, but such sentence shall be imposed concurrent to the sentence imposed for the instant conviction." (Emphasis added). Here, the circuit court imposed the sentences in both cases on July 18, 2008, but did not enter the judgment in Criminal No. 06-1-0507 until July 22, 2008. Therefore, no prior conviction had been entered in Criminal No. 06-1-0507 at the time the circuit court announced its sentence of Shamblin in Criminal No. 07-1-0161. Under HRS § 706-606.5(7)(c) (Supp. 2010), "[a] conviction occurs on the date judgment is entered." Therefore, we conclude that the judgment in Criminal No. 06-1-0507 entered on July 22, 2008 was not a "prior conviction" for purposes of consecutive mandatory minimum terms under HRS § 706-606.5. The circuit court abused its discretion to the extent its judgment in Criminal No. 07-1-0161 ordered the mandatory minimum terms in that case to run consecutively to the mandatory minimum terms in Criminal No. 06-1-0507.

IV.   Conclusion

Based on the foregoing, we vacate that part of the judgment in Criminal No. 07-1-0161 that requires the mandatory minimum terms in that case to run consecutively with the mandatory minimum terms in Criminal No. 06-1-0507, and we remand for entry of an amended judgment in Criminal No. 07-1-0161 consistent with this opinion.  In all other respects, we affirm the judgments in both Criminal No. 06-1-0507 and Criminal No. 07-1-0161.

DATED:   Honolulu, Hawai'i, March 9, 2011.

On the briefs:

Matthew S. Kohm
for Defendant-Appellant

Richard K. Minatoya
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

13